**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

   Plaintiff,

vs.

TEREALL DESHAWN GREEN,

   Defendant.

No. 18-CR-2006-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2** |
| **II.** | **RELEVANT PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . | **2** |
| **III.** | **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2** |
| **IV.** | **RELEVANT FACTUAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . | **3** |
| **V.** | **ANALYSIS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** |

- A. *Traffic Stop* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   1. Objection 1: Speed estimate . . . . . . . . . . . . . . . . . . . . . . . . . 6
   2. Objection 2: Video of speeding . . . . . . . . . . . . . . . . . . . . . . 6
   3. Objection 3: License plate inquiry . . . . . . . . . . . . . . . . . . . . 7
   4. Objection 4: Proper turn signal . . . . . . . . . . . . . . . . . . . . . . 8
   5. Objection 5: Approaching the passenger side . . . . . . . . . . . . 8
   6. Objection 6: Officer Ehlers's credibility . . . . . . . . . . . . . . . . 9
- B. *First Pat-Down Search* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   1. Objection 7: Liquor bottles . . . . . . . . . . . . . . . . . . . . . . . . . 9
   2. Objection 8: Ordering the passengers from the SUV . . . . . . . 10
   3. Objection 9. Odor of marijuana . . . . . . . . . . . . . . . . . . . . . 10
   4. Objection 10-17: Reasonable suspicion to search . . . . . . . . . 11
- C. *Second Pat-Down Search* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   1. Objection 18: Officer Girsch's knowledge . . . . . . . . . . . . . . 12
   2. Objection 19: Officer Ehlers's gloves . . . . . . . . . . . . . . . . . 14
   3. Objection 20: Gun in the SUV . . . . . . . . . . . . . . . . . . . . . . 14
- D. *Questioning* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   1. Objection 21: Accuracy of Defendant's Brief . . . . . . . . . . . 15

        *2.     Objection 22: Custody status* . . . . . . . . . . . . . . . . . . . . . . . *16*
        *3.     Objection 23: Public safety exception* . . . . . . . . . . . . . . . . . *17*
    *E.     Flight* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*
*VI.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## I. INTRODUCTION

The matter before the court is Defendant Tereall Deshawn Green's Objections (docket no. 51) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 43), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 26).

## II. RELEVANT PROCEDURAL BACKGROUND

On February 22, 2018, a grand jury returned an Indictment (docket no. 2) charging Defendant with one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* Indictment at 1-2. On March 30, 2018, Defendant filed the Motion. On April 6, 2018, the government filed a Resistance (docket no. 35). On April 18, 2018, Judge Williams held a hearing ("Hearing") on the Motion. *See* April 18, 2018 Minute Entry (docket no. 37). Defendant appeared in court with his attorney, Anne Laverty. Assistant United States Attorney Anthony Morfitt represented the government. On April 25, 2018, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On May 9, 2018, Defendant filed the Objections. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting

that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

On January 13, 2018, at approximately 1:00 a.m., Waterloo Police Officer Jordan Ehlers observed a black Nissan Rogue SUV ("SUV") turn onto Broadway. Officer Ehlers began following the SUV, which appeared to be traveling at a high rate of speed. Officer Elhers noticed that the license plate frame on the SUV obscured part of the registration sticker. Officer Ehlers also ran the license plate number and discovered that it was not registered to the SUV, but rather a different vehicle. The SUV turned from Broadway onto Cedar Bend, and Officer Ehlers continued to follow. At this time, Officer Ehlers was able to estimate, based on his training and experience, that the SUV was traveling at five to seven miles per hour faster than the posted speed limit of 35 miles per hour. Officer Ehlers initiated a traffic stop as the SUV turned onto Woodmayr Drive. The SUV did not stop immediately, but instead proceeded approximately half a block before pulling into a driveway.

---

[1] After reviewing the Hearing Transcript (docket no. 61), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 3-5. Therefore, the court shall only briefly summarize the facts here. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

Officer Ehlers approached the SUV from the passenger side and immediately detected a strong odor of alcohol coming from inside the SUV. He observed that there were multiple open bottles of liquor at the front passenger's feet that appeared to have spilled a significant amount of alcohol onto the floorboard. Officer Ehlers asked all of the SUV's occupants to produce identication, but only the driver had any. The front passenger verbally identified himself as Defendant. The back passenger on the passenger side lowered his window and identified himself as Deshawn Marks. As Marks lowered his window, Officer Ehlers smelled marijuana coming from inside the SUV. The rear passenger on the driver's side, co-defendant Javonta Juan Herbert, initially identified himself as Spencer Green, but later admitted his true identity. Herbert was acting very nervous, avoiding eye contact with Officer Ehlers, pulling his hat over his face and was visibly shaking.

Officer Ehlers radioed for backup, and Waterloo Police Department Officers Randy Girsch and Kenneth Schaaf arrived shortly thereafter. Officer Ehlers then asked Defendant and Marks to exit the vehicle. Officer Ehlers performed a quick pat-down search of Defendant and Marks. Officer Ehlers found nothing on Defendant, but found clear plastic baggies containing marijuana residue on Marks. Defendant and Marks remained outside the vehicle as Office Ehlers continued his investigation. Due to the frigid cold, Officer Girsch offered to let Defendant and Marks wait in the back of his patrol car to keep warm. Officer Girsch informed them that he would leave the door open for them if they preferred. Defendant and Marks both entered Officer Girsch's patrol car and kept the door open. As they sat there, Officer Girsch asked them if they had any contraband on them, which they both denied.

Officer Schaaf then alerted his fellow officers that he had found a firearm in the SUV. At that point, Officer Girsch placed Defendant in handcuffs and conducted another pat-down search. Officer Girsch asked Defendant repeatedly if he had any weapons on

him, which Defendant continued to deny. Officer Girsch then found and removed a firearm from Defendant's waistband. Officer Girsch asked Defendant if the gun was loaded, and Defendant replied that it was. Officer Girsch then arrested Defendant and returned him to the patrol car. A short time later, Defendant escaped from the patrol car and fled the scene. Officers pursued Defendant and captured him a few minutes later.

## V. ANALYSIS

In the Motion, Defendant seeks to suppress "[w]eapons found in the vehicle or on Defendant's person," "[i]ncriminating statements made by Defendant" and evidence of "Defendant's flight after arrest." Motion at 1. Defendant argues that Officer Ehlers's initial traffic stop of Defendant was an illegal seizure and that both pat-down searches of Defendant were illegal searches. *See* Brief in Support of Motion (docket no. 27)[2] at 10-13. Defendant also argues that Officer Girsch conducted an illegal custodial interrogation of Defendant without advising him of his *Miranda* rights. *See id*. at 12.

Judge Williams found that Officer Ehlers had probable cause to initiate the traffic stop and that both pat-down searches of Defendant were lawfully supported by reasonable suspicion. *See* Report and Recommendation at 7-11. Judge Williams further found that Defendant "was not subject to unlawful custodial interrogation." *Id*. at 13. Defendant makes twenty-four factual and legal objections to Judge Williams's findings, falling into five general categories: the traffic stop, the first pat-down search, the second pat-down search, the interrogation and Defendant's flight. *See generally* Objections. The court will address each objection in turn.

---

[2] The court notes that Defendant failed to comply with the Local Rules, which require a brief to "be filed as an electronic attachment to the motion it supports under the same docket entry as the motion." LR 7(b)(3).

### A. Traffic Stop

#### 1. Objection 1: Speed estimate

Defendant objects to Judge Williams's finding that Officer Ehlers observed the SUV "speeding" and "accelerating at a high rate of speed." Report and Recommendation at 3, 7. Defendant argues that "[t]his claim is uncorroborated" because Officer Ehlers did not measure the SUV's speed with radar or pacing, and the speeding was not recorded by either Officer Ehlers's body camera or dashboard camera. Objections at 1-2. Judge Williams correctly noted, however, that Officer Ehlers "was trained to estimate the speed of cars by observation at the police academy and successfully completed that training." Report and Recommendation at 3 n.2. The court finds credible Officer Ehlers's testimony that he was able to use his training to estimate the SUV's speed at five to seven miles per hour over the speed limit. *See* Hearing Transcript at 13. Therefore, the court shall overrule this objection.

#### 2. Objection 2: Video of speeding

Defendant objects to Judge Williams's finding that Officer Ehlers "observed the SUV accelerating at a high rate of speed after turning" onto Cedar Bend. Report and Recommendation at 7. Defendant asserts that the video from Officer Ehlers's dashboard camera shows that his top speed when pursing the SUV was 45 miles per hour and that he caught up with the SUV after following it for one or two blocks. *See* Objections at 2. Defendant argues that it is "unlikely" that Officer Ehlers could have caught up to the SUV if it had been traveling faster than the posted speed limit of 35 miles per hour. *Id*.

Defendant's description of the video omits several critical details. The video does not begin until after the SUV turned onto Cedar Bend, while Officer Ehlers was still on Broadway. The SUV does not appear until Officer Ehlers makes the turn onto Cedar Bend, at which point it is more than half a block away. Therefore, Officer Ehlers had the opportunity to visually estimate the SUV's speed immediately after it made the turn, which

is not captured on video. Additionally, traveling at 45 miles per hour, Officer Ehlers was unable to catch up to the SUV until it made a sharp deceleration to turn onto Woodmayr Drive. Officer Ehlers closed most of the distance between himself and the SUV as it decelerated. It is therefore likely that, consistent with Officer Ehlers's testimony, the SUV was accelerating at a high rate of speed after turning onto Cedar Bend. Accordingly, the court shall overrule this objection.

### 3. *Objection 3: License plate inquiry*

Defendant objects to Judge Williams's finding that Officer Ehlers had probable cause to initiate a traffic stop because "a license plate inquiry show[ed] [that] the registration did not belong to the SUV." Report and Recommendation at 6. Defendant argues that Officer Ehlers's body camera video shows that, contrary to his testimony at the Hearing, he did not use his in-car computer to run the SUV's license plate number prior to the traffic stop. *See* Objections at 2. Defendant contends that Officer Ehlers's dashboard camera video shows him running the SUV's license plate number via radio after he and the SUV had already stopped. *See id*.

Defendant's arguments misrepresent the content of both videos. Officer Ehlers's body camera video does not begin until less than ten seconds before he stops his vehicle, long after he had activated his lights to initiate the traffic stop. Therefore, the video would not show Officer Ehlers using the in-car computer to run the SUV's license plate number prior to the stop. Moreover, the screen appears to be displaying some kind of program with a mostly black background, which is consistent with Officer Ehlers's description of the computer program that he used to run the SUV's license plate number. *See* Hearing Transcript at 10. Additionally, although Officer Ehlers can be heard on the dashboard camera video stating the SUV's license plate number into his radio just after stopping the SUV, it is apparent that he is reporting his location and the number of the car to dispatch. This conclusion is bolstered by the fact that Officer Ehlers does not wait for a response

7

from dispatch or any results of a license plate number check before exiting his vehicle and engaging the SUV's occupants. Therefore, neither of the videos undermine the finding that Officer Ehlers knew that the SUV's license plates did not match before the traffic stop. Accordingly, the court shall overrule this objection.

### 4. Objection 4: Proper turn signal

Defendant objects that Judge Williams "failed to find that the SUV made a proper signal and turn onto Woodmayr Drive." Objections at 3. Defendant argues that this is "important" because, if Officer Ehlers intended to detain the SUV for speeding, he "likely would have done that back on Cedar Bend Street or even Broadway." *Id*. The court finds this argument to be baseless speculation. Officer Ehlers testified that he was able to make a visual estimate of the SUV's speed after it turned onto Cedar Bend, and that he initiated a traffic stop at that point. *See* Hearing Transcript at 4. The court finds this testimony credible. Moreover, the court sees no rational connection between the SUV making a proper turn signal and Officer Ehlers having probable cause to detain the vehicle for speeding. The court finds no reason Judge Williams ought to have made such a finding. Accordingly, the court shall overrule this objection.

### 5. Objection 5: Approaching the passenger side

Judge Williams found that, after Officer Ehlers detained the SUV, he approached it from the passenger side. *See* Report and Recommendation at 3. Defendant argues that this finding "shows [that] the traffic stop was not supported by probable cause that Officer Ehlers indeed observed a traffic and/or license plate violation" because approaching the SUV from the driver's side "would have been the most logical and appropriate way to approach the SUV, if the true reason for the stop was a speeding violation and/or [a] license plate issue[]." Objections at 3.

The court finds that Defendant's argument as to the most logical or appropriate way to have conducted the traffic stop is speculative and without basis in the record.

8

Additionally, Officer Ehlers's actions after the traffic stop began have no bearing on whether Officer Ehlers developed probable cause to believe a traffic violation had occurred prior to the traffic stop. To the extent that Defendant argues that the traffic violation was not Officer Ehlers's actual, subjective motivation for initiating the traffic stop, his argument is irrelevant. The only pertinent issue is whether Officer Ehlers had probable cause, not what his subjective intentions were. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Accordingly, the court shall overrule this objection.

### *6. Objection 6: Officer Ehlers's credibility*

Defendant again objects that "Officer Ehlers's testimony was not credible" and that "[t]he traffic stop was not justified by probable cause." Objections at 3. Defendant offers no new argument in support of this objection. The court finds that Officer Ehlers's testimony was credible. The court further finds that Officer Ehlers had probable cause to detain the SUV for three independent traffic violations: (1) speeding; (2) driving with an obstructed registration sticker; and (3) driving with a license plate not registered to the vehicle. Accordingly, the court shall overrule this objection.

## B. First Pat-Down Search

### *1. Objection 7: Liquor bottles*

Defendant objects to Judge Williams's finding that, when Officer Ehlers approached the open passenger side window "[h]e observed multiple bottles of liquor at the feet of the front passenger, and the floor board appeared to be soaked." Report and Recommendation at 3. Defendant asserts that the video from Officer Ehlers's body camera shows that Officer Ehlers "trained his flashlight beam into the SUV for only a brief moment" and never at the floorboard. Objections at 4. Defendant argues that without aid of a flashlight pointed at the floor "[i]t would not have been possible for [Officer] Ehlers to observe

'multiple bottles' at [Defendant's] feet, nor the condition of the floorboard, in a dark car at night." *Id*.

The court finds that the body camera video does not undermine Officer Ehlers's testimony regarding his observations of the SUV's interior. The video reveals that there were multiple sources of ambient light around the SUV. These would have provided Officer Ehlers enough light to see into the interior of the SUV. The court finds that Officer Ehlers's testimony that he observed open liquor bottles and a soaked floorboard to be credible. Accordingly, the court shall overrule this objection.

### 2. *Objection 8: Ordering passengers from the SUV*

Defendant objects that "[t]here was no testimony why the liquor violations (open containers) played any part in [Officer] Ehlers's decision to pull the occupants out of the SUV to pat them down and question them." *Id*. The court notes that this does not appear to be an objection to any specific finding by Judge Williams, and it is therefore waived. *See Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (per curiam) ("[O]bjections must be timely and specific to trigger de novo review by the District Court of any portion of the magistrate's report and recommendation."). Regardless, Defendant is factually incorrect. Officer Ehlers testified at the Hearing that the odor of alcohol, the odor of marijuana and the nervousness of the backseat passenger all contributed to his decision to continue the traffic stop and further investigate. *See* Hearing Transcript at 7. Officer Ehlers's call for backup and decision to remove the SUV's occupants and question them were the continuation of that investigation. Accordingly, the court shall overrule this objection.

### 3. *Objection 9: Odor of marijuana*

Defendant objects to Judge Williams's finding that "Officer Ehlers smelled the odor of marijuana" when Marks lowered his window. Report and Recommendation at 4. Defendant argues that Officer Ehlers's testimony on this subject was not credible because

"[i]f [Officer] Ehlers could smell marijuana though Marks's window, he most likely would have also smelled it coming from [Defendant's] window, only a few inches forward." Objections at 4. Defendant asserts that "no actual marijuana or smoking device [was] found in the SUV (only empty baggies)." *Id*. at 4-5. Defendant argues that, therefore, "it is very likely that [Officer] Ehlers actually smelled marijuana." *Id*. at 5.

Defendant again misstates the record. Officer Ehlers found clear plastic baggies containing marijuana residue in Marks's pocket. *See* Hearing Transcript at 8. It is therefore credible that Officer Ehlers smelled marijuana inside the SUV. Furthermore, it is logical that Officer Ehlers only smelled marijuana when Marks rolled down his window, because Marks had the marijuana on his person. As only marijuana residue was present, it is credible that the odor was only detectable when Marks lowered his window. Accordingly, the court shall overrule this objection.

### 4. *Objections 10-17: Reasonable suspicion to search*

Judge Williams found that the combination of a number of factors established reasonable suspicion for Officer Ehlers to conduct a pat-down search of Defendant. *See* Report and Recommendation at 9-10. Defendant identifies some of these factors, specifically "the alleged license plate violation, the SUV's failure to stop immediately, 'suspicious movements' of the SUV's occupants, the inherent dangerousness of a traffic stop, the time of night, . . . Herbert's nervousness, and the presence of people coming out of the house" and objects that "whether taken alone or in combination, [they] do not support a finding that [Officer] Ehlers's suspicion was 'reasonable.'" Objections at 5. Defendant also argues that each of those factors, in isolation, does not justify a pat-down search or is subject to an innocent explanation. *See id*. at 5-6. Defendant further argues that there was insufficient evidence in the record for Judge Williams to conclude that Officer's Ehlers's information that Defendant had recently possessed a firearm supported the pat-down search. *See id*. at 6-7.

"Whether reasonable suspicion exists depends on the totality of the circumstances, in light of the officer's experience." *United States v. Stigler*, 574 F.3d 1008, 1010 (8th Cir. 2009) (quotation omitted). "Observations of the officers are considered 'as a whole, rather than as discrete and disconnected occurrences.'" *United States v. Kent*, 531 F.3d 642, 648 (8th Cir. 2008) (quoting *United States v. Poitier*, 818 F.2d 679, 683 (8th Cir. 1987)). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Collins*, 883 F.3d 1029, 1032 (8th Cir. 2018) (quotation omitted).

The court will not evaluate a particular factor or subset of factors in isolation when determining whether law enforcement acted with reasonable suspicion and eliminate from consideration those for which some innocent explanation may be offered. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002) (holding that Fourth Amendment jurisprudence "precludes this sort of divide-and-conquer analysis"). The court finds that, in the totality of the circumstances, Officer Ehlers acted with reasonable suspicion. All of the factors listed by Judge Williams contributed to Officer Ehlers's reasonable suspicion that Defendant "might be armed and presently dangerous and criminal activity might be afoot," justifying the pat-down search. *United States v. Robinson*, 664 F.3d 701, 704 (8th Cir. 2011) (quotation omitted). Additionally, because Officer Ehlers did not discover any evidence during his pat-down search, there is nothing for the court to suppress if it were to find the search unlawful. Accordingly, the court shall overrule these objections.

### C. Second Pat-Down Search

#### 1. Objection 18: Officer Girsch's knowledge

Defendant objects to Judge Williams's finding that "[g]iven the totality of the circumstances, including all of the evidence that justified the first pat-down search . . . Officer Girsch was justified in handcuffing Defendant . . . and conducting a more thorough

pat-down search of Defendant's . . . person after other officers had found a firearm." Report and Recommendation at 11. Defendant argues that Officer Girsch was not briefed about Officer Ehlers's observations when he arrived on the scene, and that therefore Officer Ehlers's observations cannot justify Officer Girsch's search. *See* Objections at 7.

The court finds that, given the totality of the circumstances, Officer Girsch's search was supported by reasonable suspicion. "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007) (quoting *United States v. Robinson*, 119 F.3d 663, 666-67 (8th Cir. 1997). Here, Officer Girsch observed Officer Ehlers conduct a pat-down search of Defendant, which informed him that there was reason to be concerned that Defendant was armed and dangerous. When Officer Schaaf altered the team that there was a gun in the SUV, it was reasonable for Officer Girsch to be concerned that Officer Ehlers had missed something in his brief pat-down. The preexisting suspicion based on the observations of Officer Ehlers, particularly when combined with the heightened safety concerns from the presence of a firearm, gave Officer Girsch reasonable suspicion that Defendant was armed and dangerous, sufficient to justify the pat-down search.

Defendant also asserts that "[h]ad [Officer] Girsch been legitimately concerned about whether [Defendant] or Marks had a weapon, he likely would have handcuffed them 'for officer safety' and to discourage their flight" immediately after they exited the SUV. Objections at 7. The court finds that Defendant's assertion is speculative and without basis in the record. It is logical that Officer Girsch would be more concerned about his safety after Officer Schaaf found a gun in the SUV than he had been before. Therefore, it was reasonable that he would handcuff and search Defendant and Marks at that point despite not having done so before. Accordingly, the court shall overrule this objection.

### 2. *Objection 19: Officer Ehlers's gloves*

Defendant objects to Judge Williams's finding that "Officer Ehlers was wearing gloves during the first pat-down search, and conducted a 'quick' pat-down search due to the extremely cold temperature." Report and Recommendation at 11. Defendant argues that "[Officer] Ehlers did not so testify." Objections at 7. Defendant is incorrect. Officer Ehlers stated that he was wearing gloves, and he described his pat-down search of Defendant as "a little quicker" than normal "[b]ecause of the circumstances of the weather." Hearing Transcript at 7. Defendant also asks "if a second pat-down was appropriate 'for officer safety,' would not the exact same concern apply for an initial pat-down?" Objections at 7. This is not an objection. To the extent this question could be construed as such, the court has already found that both Officer Ehlers and Officer Girsch had reasonable suspicion that Defendant was armed and dangerous, and so each of their pat-down searches were lawful. Accordingly, the court shall overrule this objection.

### 3. *Objection 20: Gun in the SUV*

Defendant objects to Judge Williams's finding that the discovery of a gun in the SUV was "an additional circumstance that heightened the dangerousness of the situation," and therefore contributed to Officer Girsch's reasonable suspicion to conduct the second pat-down. Report and Recommendation at 11. Defendant argues that "[t]here was no testimony that supported a suspicion that the presence of a gun in the SUV made it more likely that [Defendant] and Marks, several car lengths away and in the company of an armed officer, would likewise possess a firearm." Objection at 8. Defendant further argues that Officer Girsch had "greater assurance that the men were . . . not armed" because they had already been searched. *Id*.

As stated above, the court finds that Officer Girsch acted with reasonable suspicion. The court finds that the presence of a gun in the SUV, after its occupants had denied the presence of weapons, is a fact that increased the suspicion that other occupants of the SUV

might have weapons on their person. The fact that Officer Ehlers had already conducted a pat down search of Defendant did not so alleviate this suspicion as to render the second search unlawful. Officer Girsch observed the first pat-down search and saw that Officer Ehlers had acted with haste. *See* Hearing Transcript at 16. It was therefore reasonable for him to be concerned that Defendant might still have a weapon, particularly after Officer Schaaf discovered the gun in the SUV. Accordingly, the court shall overrule this objection.

### D. *Questioning*

#### 1. *Objection 21: Accuracy of Defendant's Brief*

Defendant objects to Judge Williams's finding that Defendant's "description of the facts is inaccurate" in his Brief in Support of Motion when describing Officer Girsch questioning Defendant. Report and Recommendation at 11. Defendant asserts two specific facts: (1) that "Officer Girsch did escort [Defendant] and Marks back to the last patrol vehicle," and (2) that "Officer Girsch did stand in the doorway of the patrol car directly in front of [Defendant]." Objections at 8. Defendant also argues that Judge Williams irrelevantly pointed out that Officer Girsch "kept his promise and left the car door open" and Defendant asserts that he "was 'detained' for purposes of constitutional rights analysis." *Id*.

Judge Williams was correct to say that Defendant's "description of the facts is inaccurate" in the Brief in Support of Motion. Report and Recommendation at 11. Although some of the facts asserted by Defendant were accurate, such as the two he reiterates in the objection, others are unsupported by the record. In the Motion, Defendant states that he was "illegally detained" when he was inside Officer Girsch's patrol car, and that his placement there "was no mere chance choice of vehicles." Brief in Support of Motion at 12. In fact, Defendant was lawfully detained as a result of a traffic stop, and that detention was lawfully extended based on Officer Ehlers's reasonable suspicion that

he "might be armed and presently dangerous and criminal activity might be afoot." *Robinson*, 664 F.3d at 704. There is no evidence in the record that Officer Girsch chose the patrol car for any reason other than that it was his vehicle. Judge Williams's finding that Officer Girsch left the vehicle door open for Defendant was relevant to the fact that Defendant entering the patrol car did not alter or elevate his custody status. The court finds that Judge Williams's description of these events was accurate. Accordingly, the court shall overrule this objection.

### 2. *Objection 22: Custody status*

Defendant objects to Judge Williams's finding that Defendant "was not in custody for the purposes of *Miranda*" when Officer Girsch questioned him while he was sitting in the back of Officer Girsch's patrol car. Report and Recommendation at 12. Defendant asserts that he was "physically detained by [Officer] Girsch's presence, and [he] could not have simply gotten out of the patrol car and walked home." Objections at 9. Defendant argues that he was, therefore, in custody for purposes of *Miranda* and entitled to be read his *Miranda* rights before being asked any questions. *See id*.[3]

Defendant's argument is misplaced. "Although a motorist is technically seized during a traffic stop, *Miranda* warnings 'are not required where the motorist is not subjected to the functional equivalent of a formal arrest.'" *United States v. Coleman*, 700 F.3d 329, 336 (8th Cir. 2012) (quoting *United States v. Morse*, 569 F.3d 882, 884 (8th Cir. 2009)). The fact that Defendant would not have been able to stand up and walk away if he wanted to do so is insufficient to convert the traffic stop into an arrest.

This case bears a striking similarity to *Coleman*. In *Coleman*, the defendant was detained for a traffic violation. *See id*. at 332-33. The police officer instructed the

---

[3] The court notes that Defendant has not identified any incriminating statements made in response to these questions that he seeks to suppress. The record indicates that Defendant's only response to these questions was to deny being in possession of a weapon and deny knowledge of the weapon in the SUV.

16

defendant to sit in his patrol car while the officer wrote the ticket. *See id*. at 333. While writing the ticket, the officer asked the defendant a number of questions about his criminal history and about any criminal activity he might be engaged in. *See id*. The defendant's answers led the officer to develop probable cause to search the defendant's vehicle, where he found firearms and narcotics. *See id*. The Eighth Circuit Court of Appeals found that the defendant was not subjected to the functional equivalent of an arrest because he "was not handcuffed and had not been told his detention would be anything other than temporary. [The officer's] tone was conversational and the questions were limited in number and scope." *Id* at 336.

In this case, as in *Coleman*, Defendant was not handcuffed, and he was not told he was under arrest. Officer Girsch's tone was conversational and his questions were limited in number and scope. Moreover, Defendant entered Officer Girsch's patrol car voluntarily at Officer Girsch's invitation, not at his instruction as in *Coleman*. Given the totality of the circumstances, Defendant was not subject to the functional equivalent of a formal arrest. *See id*.; *see also United States v. McCarty*, 612 F.3d 1020, 1025 (8th Cir. 2010) (finding no functional equivalent of arrest despite the officer directing the defendant to wait in the patrol car for the remainder of the traffic stop). Accordingly, the court shall overrule this objection.

### 3. *Objection 23: Public safety exception*

Defendant objects to Judge Williams's finding that the questions that Officer Girsch asked Defendant after handcuffing him "were designed to protect officer and public safety" and therefore "fall into the public safety exception to *Miranda*." Report and Recommendation at 13 (citing *New York v. Quarles*, 467 U.S. 649, 655-57 (1984)). Defendant's only argument that the public safety exception does not apply is that Defendant had already been patted down, and so "[h]ad [Officer] Girsch been legitimately concerned about safety, he would have handcuffed [Defendant] and Marks before they

17

walked down to sit in the patrol car." Objections at 9. As previously discussed, the court finds this argument about what Officer Girsch would have done if his safety concerns had been real to be speculative and without basis in the record. Officer Girsch received additional information that there was a gun in the SUV. His concern that Defendant might be armed and dangerous justifiably increased and he acted accordingly. The court shall overrule this objection for the same reasons it shall overrule Objection 18. *See supra* Section V(C)(1).

### *E. Flight*

Defendant argues that Judge Williams "incorrectly determined the facts and misapplied the law with respect to the legality of the traffic stop and two pat-down searches" and that "[i]f any of those incidents violated [Defendant's] Fourth, Fifth, or Sixth Amendment rights, then evidence of [Defendant's] flight also must be excluded." Objections at 9. The court has already found that Judge Williams correctly determined the facts and applied the law. Accordingly, the court shall overrule this objection.

### VI. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 51) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 43) is **ADOPTED**;

(3) The Motion to Suppress (docket no. 26) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 7th day of August, 2018.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA